Good morning, Your Honors, may it please the Court, I'm John Duesenberry for Joshua Larrimore. It's my contention that the only issue... Hold on a second, Mr. Duesenberry. Thank you. Go ahead, sir. Yes. I maintain, Your Honor, that the only issue presented in this appeal is whether Mr. Larrimore's possession of the firearm in this case facilitated the theft of the firearm. Because that's the issue, it is a... It's important to note, I think, at the outset that that is by its nature a nuanced, case-specific, factual determination. And because it is, questions that pertain to the elements of burglary, statutory or common law, and the similarities or differences between those elements and other crimes, whether it's larceny or safe-cracking, are at most interesting, but ultimately beside the point. The District Court here, I contend, in four specific respects that I can identify. First, it employed a categorical approach in resolving what is, as I mentioned, ultimately a fact-specific determination. Clearly, blunt, and all of the cases prior to the guideline amendment turn on, or make clear, that whether and to what extent a firearm is used in connection with another felony offense is specific to the facts of that case. That was the rule before blunt, or that was the rule before the guideline amendment, that was also, as this Court has repeated in Hampton and... So looking at the facts of this case, how is the firearm not in connection with the theft? It was the object of the theft. And that, in my contention, Your Honor, it's precisely because it's the object of the theft, and nothing else, that it was not actually used in any way other than being the object of the theft. It facilitated the theft, didn't it? How can you steal the firearm without taking the firearm? That's the point, Judge. But it doesn't have to be used to brandish or to threaten. It can actually just facilitate the offense itself, right? But I think to facilitate means that it somehow renders the firearm possession offense more dangerous. That was a part of the preface of the blunt panel. But if that's the case, then if the blunt said that, that's true. You're right about that, sir. But the change to the guideline and the analogy, I believe the reason Judge Osteen, ultimately he had some concern about it, but the burglary, the commentary, the application note commentary after the change in 2006 made it very clear that for burglary, you break in with the intent to do whatever you're going to do as a felony, and then that's the completed offense. You open it, you take the gun, and that's all that's necessary. It doesn't have to have anything further than that. And although Judge Osteen pointed out correctly that under North Carolina law, there is no intent acquired with safe cracking, but the other elements of it are certainly the same as burglary or breaking and entering without authority. And if blunt is changed by the change in the guidelines, how is this different than the gun from that? How is that any different than what they said for burglary? The guideline amendment essentially defines the issue of in connection with out of existence in the context of burglary, but only in the context of burglary. It categorically declares that irrespective of the specific facts, if a firearm is taken during a burglary, then it is possessed in connection with the firearm offense. But it does not foreclose the rest of the blunt analysis in terms of what in connection with means. The blunt's determination that in connection with in this circuit has a more narrow meaning requires a much closer nexus between the firearm, the gun offense, and whatever the object offense is. That remains intact. That is undisturbed by the guideline amendment. I suppose your point is it would have been a simple matter for the sentencing commission to add larceny or a theft offense if that's what they wanted to accomplish. That would be my position. Because the effect as I see it of the guideline amendment as it relates to burglary is to turn what had theretofore been a, as I said, a case specific factual determination, into a categorical determination as it relates to burglary. But that categorical determination does not go beyond burglary. Crimes of larceny, safe cracking are not within the context that's foreclosed by the amendment. Hence, I mean clearly the sentencing commission could not overrule this court's blunt ruling. It simply eclipsed the as it relates to burglary. But in terms of the analytical underpinnings that get to, that bring you to whether in a particular case a firearm is possessed in connection with another offense or not. What about the contention that the firearm could potentially have facilitated the offense in terms of, in this case the facts are that your client hid the gun, the weapon. So there was an interim of time where potentially he could have run into somebody else and the situation could have escalated. Isn't that the kind of concern that we have with respect to firearms and facilitating or emboldening an actor to commit another offense? I think not, Your Honor. In fact, I think they're directly at odds with the kinds of scenarios that have, that this court has shown concern for. Because I think it's particularly instructive to note that in blunt, the court identified examples of facts which, although absent from that record, had they been present, might have led to a different result, such as keeping the gun close at hand. Well, here we have the very opposite. The defendant hid the gun in a remote location. In Hampton, you've got the defendant attempting to access the firearm when he's being, in the process of being arrested. What would have happened if he had, after the police officer went outside and got in the computer to start the report, and then your client decided that he was going to go back into the safe and take the firearm, which he then hid in the backyard, what would have happened if, as he is walking out of the way the safe was to take it to hide in the backyard, the police officer had come in and seen him with a gun? At that case, don't we have exactly the situation that Judge Diaz made reference to in terms of how it ups the ante in terms of the danger of the situation? The fact that it didn't happen doesn't mean that it was not something that could foreseeably happen, and that's, I think, what we have to keep in mind, isn't it? I think not, Your Honor. I don't think that these type of provisions, which tend to, clearly, in the preface to the analysis in Blunt where the court notes that the objective, the purpose of this plus four adjustment is to ensure that greater punishment is imposed on people who engage in conduct with firearms that renders, that makes the conduct more dangerous than it would otherwise have been in the absence of the firearm. The scenario, the hypothetical scenario that the court poses, I think is, because of its hypothetical nature, is beyond the scope of what this adjustment is intended to reach. Because, in fact, I'm not aware of any case in which hypothetical facts, facts that did not, in fact, exist, but which might have existed, resulted in sustaining the imposition of this adjustment. Because when you look at the facts that actually occurred, they were, I would contend, 180 degrees out of phase with the type of behavior that is intended to be addressed by this adjustment. Take hiding the gun, placing it in a remote area, not employing the gun in any fashion to address the police officer. In fact, not, according to the evidence, didn't even access the gun until after the police officers had already left after having spent several minutes in the presence of the officers with the safe open. The notion of facilitating escape or the possibility of a violent encounter. Well, here he was in his own residence, or at least a residence where he was staying with the young. So none of those scenarios present themselves on the specific facts of this case. So I would contend that to say that the plus-four adjustment applies here not because of anything that was actually done, but because of what might have happened, I think would be a departure from the analytical precedence that precede us. They all, Blunt, Hampton, Alvarado-Perez, and other cases, even unpublished cases, all turn on the facts of that specific case. The guideline amendment categorically carves out an exception where the facts, the specific facts, as it relates to burglary. But as in any other context, in any context that's other than burglary, where the facts are rendered irrelevant, well, maybe a bit of an overstatement, but where the facts are not the determining, the facts are not dispositive. In any other context, I don't satisfy the requirements as laid down in Blunt. So your position is that Blunt, the 14B amendment notwithstanding, that Blunt remains good law with respect to the facts of this case? Absolutely. Absolutely. The analysis in Fizur, which the government cites the safe circuit decision that essentially says that you're facilitating the offense if the firearm is the object of the offense, that's just not appropriate under our standards in the fourth circuit? I think not. And I think primarily because it is purely categorical in nature. It is not fact specific. But I also think it's problematic because it's logically, I think it rests on an invalid logical premise. I don't think that the mere existence of a firearm can facilitate its then the existence of a homicide victim can facilitate Except that he didn't break into the safe just to get whatever was in there. He broke into the safe to steal firearms and then to sell them. That's what he said. I think that's not quite correct, Your Honor. As I recall, he broke into the safe to steal money, finding none, took a firearm with the intent of turning it into money. His drug problem was really at the core of all this behavior. And I think we actually called his brother as a witness at the sentencing hearing. The brother said, the brother is a person who was called saying, I've got these guns, what do I do with them? And rather than following his brother's advice, who suggested he call the owner, apologize, ask for forgiveness, Mr. Laramore called the police and concocted this scenario. So I see that my time is about up. Thank you. Thank you very much. Mr. May I please the court? My name is Drew Cochran. I represent the United States of America in this case. And this is a, as the court has heard through the briefs and through argument at this point, an issue of a guideline application where we have the sentencing guideline for firearms 2k 2.1 that calls for a four level enhancement. Anytime a defendant possesses a firearm in issue is what does it mean for it to be in connection with? Um, and in this particular case, there were two distinct felonies under North Carolina law that judge Osteen considered at the district court level to determine whether or not that offense, whether that guideline application would apply in this case. Um, and those felonies were a safe cracking, which was the original justification put forward in the pre-sentence report, uh, as well as, uh, larceny of a firearm. Um, those were the two cases, the two felonies that the district court, uh, considered in that case. Uh, and judge Osteen found that the defendant possessed the firearm in connection with, um, the felony offense of larceny of a firearm, but declined to apply it to the felony offense of safe cracking. And I think that given the in connection with the larceny, but the decline to find that with respect to the safe cracking at the larceny is probably the stronger case at this point. And there's enough evidence since the issue was presented to the district court where this court could affirm it on the alternative ground of the safe cracking. Uh, but I do think that the larceny is the stronger case at this given where we are. Um, and, uh, it's also, uh, worth noting it at this case that, um, some of the facts that, uh, I believe the court is somewhat aware of, but this defendant, um, broke into a safe, um, and found that there were firearms in that safe. Um, and at that point he hatched a were, the record shows there were six firearms in the safe. It may have been a gun safe. It may have contained other things as well. We don't know that for sure, but the sentence report indicates it was a gun safe. I think that's probably correct. Given the number of guns that were there, um, the police officers, when they arrived at scene, they called the owner of the guns and spoke with him. And, uh, and that's how they knew how many guns were supposed to be in the safe, uh, which was six. And at the time that there were, um, and the, uh, so after the defendant interacts with the officer, the officer went back to his, uh, patrol car to begin to generate a report. Um, and somewhere after that, the defendant, uh, took a firearm, uh, with the intent of selling it is what he had admitted to officers after he was, uh, questioned about that. And he hid the gun underneath a, uh, a car that was parked outside the house with the intent of getting it back later. And of course the officer comes back, realizes that one of the guns is And that's where the whole, uh, investigation went from that point. And, um, I think that, um, when we look at sort of the landscape of where the case law was, um, when we were looking at the, uh, at the burglary context, uh, which is relevant to look at in this case, uh, for a long time, there was a circuit split on the issue as to what would happen, uh, with this, um, four level increase for possession of a fireman connection with another felony offense for a defendant who during the course of a burglary finds and steals a firearm. Um, and some circuits were of the opinion that just taking that firearm in the course of a burglary made it in connection with the felony offense. Um, and this circuit held in blunt, in this court held in 2003 that a defendant had to, uh, had to do more than just take the firearm, but had to keep it on his person in order to facilitate an escape or use it in some other way to, uh, in furtherance of the, um, the crime other than just stealing the firearm. Uh, and that led to, uh, the application note 14 B that was added in 2006 to resolve the circuit split. And, uh, application of 14 B says that the, um, the guideline applies in a case in which a defendant who during the course of a burglary finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary. Um, and the, uh, that application note seems to overrule, overrule blunt to the extent of in the, in the burglary context. And in cases similar to burglary, there's a second part of that note that deals with, well, let me stop you there. Cases similar to burglary. That's not what the the traditional common law offense with burglary period. Yeah, sure. And that's the, that's the way it it's worded. Um, and I think that, oh, well, uh, words matter, right? Yes, Your Honor. They do. Uh, and it does matter. And I think that, uh, one of the things that we, the court needs to look at in this case is the, the defendant's conduct and what he did and whether it's something that's supposed to be considered under the application note, uh, or if it's not, then it's considered under the previous holding of, of blunt. And I think the, the point I think is key and Judge Osteen was honed right in on that at the hearing is that the elements of safe cracking, there's a certain level of, of similarity between common law burglary and safe cracking and that you're, you're breaking into some closed, uh, area without authority. But he asked about the, and noted that the elements of safe cracking under North Carolina statute do not require intent. And that's why burglary was singled out the way it was, isn't it? In the application note, because it's the breaking and entering of a dwelling house at night with the intent to commit a felony. It is a completed offense. Once you enter the close with that intent and the, and you can't just say that you can't, you can't write out of the importance of what was done in that application note, the key factor of what intent does to common law burglary, which is not the same for a safe cracking, despite the fact that there's a illegal entry aspect to both of them, right? How can you, you can't just eliminate that as a sleight of hand and say that they meant to, to broaden beyond burglary in the application note change to any offense that has some similarity with burglary. That's correct, your honor. And that's why the district court found that the defendant possessed the firearm in connection with the doesn't the analysis that existed in blunt about what is necessary. I mean, there was a very deliberate analysis in blunt. It was not that they, we looked at the fifth circuits analysis and said, no, that's, we're not going to go there. They looked at the sixth circuit and said, no, no, no, no, no. We're not going to go there. We think more is necessary. And in the, if blunt was a burglary case and if blunt was the effective blunt was intended to be changed by the application note, then don't we have to still apply the remaining language of non-burglary context? This court, since the application of his changed, this court has looked at, um, the applying blunt in two different cases. Um, one was in, uh, Alvarado Perez in 2010 and that involved a Maryland reckless endangerment statute. And the, uh, the second time was in 2010, the Hampton case, and that was a South Carolina assault statute. So those are things that are, you know, far and away removed from burglary. And I think what we're dealing with here with the larceny and with the safe cracking is much closer to burglary than they are to an assault or a reckless endangerment. And I think that's a key distinction. You know, the, uh, uh, conduct that's described in application of 14 B where the burglar defendant breaks into a dwelling house and, uh, steals a firearm in the course of the, of that burglary, um, that defendant under North Carolina law would have committed the offense of burglary, but also would have committed the offense of larceny of the firearm. And, uh, even though that's not addressed, you know, directly in the application, it doesn't say and larceny of a firearm, but I think that's important when we're trying to, to decide, you know, into which sort of, which analysis the court is going to apply. Wouldn't have been the easiest thing in the world if that's what the sentencing commission wanted to do is just to expand the, the, they, they specifically referred to it as burglary and, and they could very easily have said, have said that defenses are larceny offenses, but they didn't. That's true, your honor. And we contend that the conduct that they're describing in that application note is close enough to what is on hand here that this conduct should apply to. Um, but I do think it's also worth noting though, and this is, I think a big point in this case is that whether we look at the court wants to analysis, analyze this through application note 14 B or whether this court wants to analyze the case through the holding of blunt and apply that the blunt reasoning and the blunt analysis to this case, that either way, the district court did not commit error in this case with the larceny offense. Um, the, uh, blunt case, as I said before, um, it, it doesn't rule out that a defendant who possesses, who steals a firearm in the, in the course of a burglary, um, would have that, uh, would never apply in that case during the course of a larceny. And well, it blunt dealt with the burglary. So I'm talking about burglary in this case, but it works with blunt here to these facts. And it seems to me that if we're applying blunt, then, uh, traditionally what we look at is whether the firearm was used to embolden the actor or somehow facilitate, uh, uh, another offense, not in the sort of circular way that it's being applied here. Yes, Your Honor. I agree with that. And what the district court found here, uh, one of the things that the district court found is that the defendant possessed the firearm and it facilitated the offense in two separate ways. One was what we've already talked about a little bit as being the fruit of the theft. The second way that the district court found that it, that the defendant's firearm facilitated the offense, uh, was, uh, to, uh, um, uh, assistant escape or to a facilitate escape is the way that, that he, that the judge Osteen phrase that. And I think, um, that's important in this case. And the district court didn't specifically say what was meant by that, but I think it can only be applied, um, as, uh, your Honor was asking previously of a defense counsel in this case that it was the, it have to be in the context of the police officer was already at the scene and the defendant that took the firearm at that point and took it up all the way from the gun safe up to the, uh, the car and place it behind the car. And anyone that he would have come into contact with at that point, uh, between the safe and the car, he could have used the firearm to facilitate his escape at that point. And that was a factual finding by the court that's reviewed by this court for, for clear error. And I don't think that we can find that it's error clear or otherwise. Um, and so in that context, even applying blunt in this case, um, the, the district court did not commit error. So I do think that that's going to be an odd facilitation given that he ended up ditching the gun and hiding it. I mean, it seems to counter to the, your conclusion and the district court's conclusion that somehow facilitated his escape. Well, your Honor, obviously the defendant's primary purpose for taking the firearm was not to facilitate escape. It was to steal the firearm, but he could have, he had to have it at his hand while he was, when he was leaving with it and it could have facilitated his escape, which was all that was really unnecessary in this case. I also think it's important along those same lines that, uh, you know, according to the defendant, he was obviously going to go back and take this firearm and go and sell it. So he was going to have he was interrupted in the middle of it. Um, so I think that's something that, uh, is, uh, worth noting. Uh, the district court relied on, um, Pazur, which is a, an Eighth Circuit case from 2010 that's, uh, addressed in the briefs and by the district court. Um, and, uh, I think, that, uh, Pazur's reasoning is, uh, is good reasoning in this case. It's also the, um, the only published a case that I'm aware of in any circuit that deals with the specific issue that we're looking at in this case. Uh, this circuit held in, um, in 2003 in the Shaw case that, um, a guideline application case where a defendant who both possessed a stolen firearm and, and stole the firearm, he received the four level increase for in connection with the felony offense that, that we're talking about here. And he also received a two level increase, uh, for possession of a stolen firearm. And in, in that case, this court was addressing the narrow issue of whether that was, uh, impermissible double counting under the guidelines. And this court held that it was not. Um, and so I think that's the reason why that issue wasn't raised. It's already been addressed by this court. So, um, as a side note, I do think it's worth noting that, that, that this court did address that in, in 2003. But, uh, the, uh, Pazur case in, uh, 2010, and that dealt with a defendant who, uh, was, uh, holding some firearms for a friend of his said, you know, the friend's friend said, here, hold these for me. He said, sure. And at some point he gets the idea to go in and pawn these guns and, uh, and make some money. And, uh, he received a, uh, a four level increase, um, in that case for possessing them in connection with the, uh, the theft of the offense. And, uh, there was a, uh, the, the court looked at the, the issue there and, uh, it's, uh, also somewhat interesting because they, they deal with the question of when did he actually commit the offense of theft. Was it when he put them in the car to go over to the store? Was it when he actually handed it over, um, to, uh, to pawn the items? Um, but, uh, our case is, um, it's similar to Pazur where it's on all fours where it's dealing with the same legal issue. So I think it's, it's important for the court to look at it in that context. Um, and also, uh, you know, the case that we have here is, um, somewhat stronger factually than the case that the government had in Pazur because in Pazur there was an issue as to whether or not the defendant actually possessed the guns while the theft was taking place. Whereas in this case, you know, clearly when the defendant was committing the theft by removing the firearm from the safe and taking it up to the, um, the car and hiding it in the car, he was in actual possession of that gun at the whole time. Uh, so I, I do think that, um, the district court was, uh, proper, properly relied on the, uh, Pazur case, um, and that, uh, it's one that, uh, it, it, uh, bears, um, consideration in this case and I think that it's one that the, uh, the court should adopt its reasoning and apply it here. Um, I would also point out, I, I think, uh, something that's worth considering also is the, uh, the policy considerations that are mentioned in the sentencing guidelines and, uh, what it is that these, these guidelines are driving for here with applying these, these guidelines, the same guidelines to different defendants who have committed, uh, similar crimes but have different conduct. Um, and, uh, what the, uh, guidelines say is that proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity. Um, they want to have, the, the, the guidelines are looking for punishing people who have committed the same crime in, in different ways, in different manners according to the severity. So people who have done more severity are getting obviously higher guideline sentences than people who have less severity. And it, it's worth noting that the, uh, defendant in this case, uh, in order for him to come into possession of this firearm had to commit two separate felony offenses under North Carolina law. He had to commit the felony offense of safe cracking, and then he had to commit the felony offense of larceny of a firearm to actually remove that firearm and take it from the safe and come into actual possession of it. Uh, and yet he is claiming that his sentencing guideline range should be the same as a defendant who has neither committed the offense of safe cracking or the offense of larceny. There is a separate two level enhancement for, uh, if the firearm is stolen, that was not applied in this case. It was applied your honor. So isn't your concern is, is that if I'm a, if I'm a felon and I walk down the street and, and I see a police officer and, and the police officer's handgun falls out of the holster and I pick it up and hand it back to him, I'm now a felon in possession. Now maybe that prosecutorial discretion wouldn't prosecute me for that. I hand it back. I am about as innocent as I can be, but I'm a felon in possession. All right. Now contrast that with my breaking in and stealing it. Obviously those are more severe. The second one that should get a greater punishment, but why isn't that greater level of punishment associated with the larceny already accounted for by the two level increase because the firearm was stolen. If you're worried about this is going to be a person who is not going to have a punishment that reflects the fact that there was a theft. Why doesn't that guideline take care of that for you? The difference your honor is in punishing someone who is in possession of a firearm that happens to be stolen versus a defendant who himself actually stole the firearm. The two level enhancement that your honor speaks about that applies. We see it most of the time in cases where a defendant is in possession of a firearm, you know, the officers somehow find them in possession of it. We don't know how, but they find them in possession of it. Um, we're not really sure how he came into possession of it, but they run the serial number through the database that they have that reports stolen items, the NCIC database, and it comes back as stolen and whether the defendant knew that it was stolen or not, it has that, that two level increase that your honor is referring to applies in that case. So what we're looking at here is how do we differentiate that situation that we, it's a garden variety situation that we run into all the time. In fact, most of the two level increases for possession of a stolen firearm or somewhere in that vein. So how do we differentiate that for proportionality purposes under the guideline from a defendant who happens to be in possession of a firearm that was stolen to a defendant who we know in fact stole the firearm? Um, and I think that's where there's the additional two levels and then there's the four level increase. And that's the situation that we have here. This defendant not only was in possession of a stolen firearm, but he himself actually stole that firearm and he had to actually break into the safe to take that firearm in the first place. So under proportionality and the guideline applications, um, in his sentence, his guideline range should be higher than a defendant who just happened to have a stolen firearm in his possession. Um, and I see that my time is, uh, about up here, um, unless the, the, the court has any other questions for me. Thank you very much. Thank you, your honors. Mr. Duesenberry, you have some time for rebuttal. Your honors. My, my position is that, uh, that if access to a firearm alone without more, uh, is sufficient to trigger the plus four enhancement or adjustment under section subsection B six, uh, then virtually every felon in possession of a firearm case would have that, um, uh, adjustment applied. Uh, it would essentially amount to, uh, I thought initially perhaps a rebuttable presumption, but it would almost be an irrebuttable presumption because there would be no scenario where a per the, the, uh, defendant's possession of the firearm could not be used. If what the defendant might have done with the gun became the operative test, there'd be no scenario where the felon who is in possession of the firearm could not have used the gun to, uh, commit another, uh, another crime. The, we, we were talking earlier about the possibility of him having encountered a, a law enforcement officer or someone else from the, uh, in, in the distance from, um, the house to the car where he, where he hid the gun. Well, that, that certainly is a possibility, but it would create an environment where a defendant would have to prove not only that he did not, uh, use the gun in a, an aggressive or a violent way that he couldn't, he'd have to prove that he could not have, which would I think be, uh, a virtual impossibility. I don't think that's, I don't think that's what's contemplated. Uh, I do understand the government's position in terms of the need to meaningfully distinguish between merely possession of a firearm, possessing a firearm and the defendant having stolen it. But that is the, it seems to me that that's a task appropriate to legislation or the, the, uh, rulemaking, uh, authority of the sentencing commission. It to, to stretch, I would contend, uh, this plus four enhancement of a subsection B six to fit that scenario I think would just, uh, w would not be the kind of contention that larceny or even for that matter, safe cracking can never serve as predicates for the adjustment. It, it merely is a, I'm simply saying that it's a fact specific determination and if the facts of the safe cracking or the larceny suggests, in fact, I believe there are cases where, uh, the plus four enhancement was upheld in a larceny scenario because of what, because of the situation. I remember one case and I'm sorry, I can't remember the name of it where a defendant stole a gun in another person's house. Well, the, the, the idea about, uh, the gun possibly having been used to facilitate an escape because he was in another person's house, uh, was used as a basis for, uh, for, uh, uh, upholding it here. I think it's significant that, that Mr Laramore was in his own house. So, um, so for those reasons, I asked the court to, to, uh, uh, reverse the district court's ruling and, uh, vacate the judgment and remanded for resentencing. Thank you very much down in Greek council and then proceed on to our next case.
judges: Albert Diaz, Stephanie D. Thacker, Paul W. Grimm